LELAND J. EBERLE, Plaintiff-Appellant, v. MARY JANE BRENNER, Ex'x of the Estate of Frank T. Brenner, M.D., *et al.*, Defendants-Appellees.

Fourth District   No. 4—84—0459

Opinion filed March 4, 1985.

Wayne R. Golomb, of Springfield, for appellant.

Robert G. Heckenkamp, of Heckenkamp, Simhauser & Drake, P.C., of Springfield, for appellee Mary Jane Brenner.

Robert E. Gillespie, of Springfield, for appellees Binks Manufacturing Company and Henry G. Garrolts & Sons.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow and Paul Bown, of counsel), for appellee David B. Drennan.

JUSTICE MILLS delivered the opinion of the court:
Medical malpractice *and* products liability.
Summary judgment granted as to all defendants.
We affirm as to the doctors.
We reverse and remand as to the manufacturer and lessor.

While cleaning a spray painting gun in the course of his employment, Eberle sustained a high pressure injection of a hydrocarbon fluid into his left index finger. Eberle was immediately taken to the emergency room of Blessing Hospital. The emergency room physician consulted with Dr. Drennan, who advised the physician to instruct Eberle to come to Drennan's office on Monday morning. Later that day, Eberle, who was experiencing increasing pain, was admitted to the hospital by Dr. Brenner. Dr. Brenner performed surgery on the finger the following day, making a mid-lateral incision along the outside and inside of the finger and inserting two Penrose drains in the finger. The condition of Eberle's finger worsened. Eberle was later treated by Dr. Lewis Kinkead, who amputated the finger.

On February 23, 1982, Eberle filed a multicount complaint, alleging negligence and products liability against Binks Manufacturing Company (Binks) and Henry G. Garrolts & Sons (Garrolts), the manufacturer and lessor of the spray painting gun, and alleging malpractice against Frank T. Brenner, M.D., David B. Drennan, M.D., and Blessing Hospital. (Blessing Hospital is not involved in this appeal.)

In response to motions by Drs. Drennan and Brenner, the trial court, on November 7, 1983, in anticipation of trial set for March 1984, ordered Eberle to disclose the name and specialty of each of his experts by December 15, 1983. Thereafter Eberle disclosed the name of his medical expert, Dr. Kinkead.

Drs. Drennan and Brenner each moved for summary judgment on those counts of the complaint directed against them on the ground that the deposition of Dr. Kinkead revealed that he could not testify with any degree of medical certainty that their conduct was the cause of Eberle's injuries. Portions of Dr. Kinkead's deposition were attached to the motion. On January 24, 1984, Binks and Gar-

rolts moved to dismiss Eberle's complaint against them on the ground that Eberle had failed to disclose any expert witnesses with respect to his negligence and products liability claims against them. In their motion, they argued that expert testimony was required to establish these claims. Eberle failed to respond to either the motion to dismiss or the motions for summary judgment.

On April 5, 1984, the trial court granted Brenner and Drennan's motions for summary judgment and denied Eberle's motion for leave to file the complete discovery deposition of Dr. Kinkead. By separate order, the trial court also granted Binks and Garrolts' motion to dismiss and dismissed the counts against them with prejudice. Eberle moved to vacate the orders entered on behalf of all defendants.

On May 24, 1984, the trial court denied Eberle's motion to vacate the summary judgment entered in favor of Drs. Brenner and Drennan. By this order, Eberle was given leave to file the complete deposition of Dr. Kinkead. On June 4, 1984, the trial court denied Eberle's motion to vacate the order dismissing his claims against Binks and Garrolts.

### DRS. BRENNER AND DRENNAN

■ On appeal, Eberle contends that the trial court erred in granting summary judgment in favor of Drs. Brenner and Drennan because they failed to show, by affirmative evidence, that Eberle's finger would not have been saved even if his injury had received prompt, proper medical treatment. In response, the physicians argue that summary judgment was proper, given the failure of Eberle's expert to establish that their treatment or failure to treat Eberle proximately caused the loss of his finger. We agree with the physicians.

(Before we discuss the law in this case, we note that the record does not contain a copy of a report of the proceedings of the hearings on the defendants' motions to dismiss and for summary judgment. This practice should be discouraged. Transcripts of such hearings, especially in cases where the plaintiff is denied his day in court, are a valuable aid in this court's determination of the issues.)

Summary judgment is proper only if there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law. (*Prather v. Decatur Memorial Hospital* (1981), 95 Ill. App. 3d 470, 420 N.E.2d 810.) The pleadings, depositions, affidavits, and exhibits must be construed most strictly against the movant and most liberally in favor of the opponent. (*Boddie v. Litton Unit Handling Systems* (1983), 118 Ill. App. 3d 520, 455 N.E.2d 142.) The opponents' failure to file a counteraffi-

davit, however, does not entitle the movant to judgment in his favor as a matter of course. Nevertheless, when an opponent fails to file a counteraffidavit, the facts contained in the movant's affidavits and depositions are then accepted as true, notwithstanding any contrary assertions contained in the opponent's pleadings. *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.

In their motion for summary judgment, the physicians argued that the deposition of Eberle's sole expert, Dr. Kinkead, revealed that he could not testify with any reasonable degree of medical certainty that their treatment of or failure to treat Eberle was the cause of his injuries. We agree.

The pertinent portion of Dr. Kinkead's discovery deposition attached to the defendant's motion for summary judgment revealed the following:

"MR. EGGERS [attorney for defendant Brenner]: You stated in a letter to Mr. Golomb on December 9th, 1980, that 'Injection injuries of this nature are extremely severe. The irritant nature of mineral spirits or turpentine coupled with the high pressure injection injury leads to a high amputation rate.' That was your opinion on December 9th, 1980. Is that still your opinion today?

DR. KINKEAD: I would say it's higher with the mineral spirits or any of those types of agents than it is with grease or some of the less irritating factors, yes.

\* \* \*

MR. MITCHELL [attorney for defendant Blessing Hospital]: But as I believe you said, as far as the saying—as far as the causal connection, as I understand from the literature, and in fact from this article by Dr. Kleinert, and also from your reports which we have, of course, and from your testimony under questioning by Mr. Eggers, in these types of pressurized injuries where you have pressure injection—and particularly with an item like a paint thinner, for example— that there is a very high risk of amputation regardless of whether the guy ends up in your hands, who is a specialist, or regardless of what happens, he may very well lose a portion of his finger as a result of that injury. Isn't that correct?

DR. KINKEAD: I have no quarrel with that. Whether we can extrapolate that to say, therefore, we don't need to do anything or we can do it in a less-than-optimal way. You know, if that's a justification for that kind of treatment, fine. But you know, it's basically—basically what you're saying is,

you know, is this result a bad result? I can't say that.

\* \* \*

MR. MITCHELL: All you're saying is, you can't say whether this guy's finger could have been saved or not, regardless of the treatment he got.

DR. KINKEAD: Correct."

Construing the deposition most strictly against the physicians and most liberally in favor of Eberle, we conclude that Eberle's sole expert, Dr. Kinkead, could not testify with any reasonable degree of medical certainty that the actions or inactions of the defendant physicians caused the eventual amputation of Eberle's finger. This court has recognized the necessity for expert medical testimony as to the proximate causal connection between the negligent act or omission of the defendant and the injury suffered by the plaintiff, in all but the most gross malpractice cases. (*St. Gemme v. Tomlin* (1983), 118 Ill. App. 3d 766, 455 N.E.2d 294; *Carman v. Dippold* (1978), 63 Ill. App. 3d 419, 379 N.E.2d 1365.) This is not such a case of "gross malpractice" as to eliminate the need for expert testimony as to proximate cause. The record demonstrates that Eberle had adequate time to establish his case. Therefore, we hold that the trial court properly granted summary judgment in favor of Drs. Brenner and Drennan.

■ Eberle contends that the burden was on the physicians to show by affirmative evidence that they were entitled to summary judgment, *i.e.*, that Eberle's finger would not have been saved even if timely and proper treatment had been rendered. His position misstates the law. Proof of proximate causation is upon the plaintiff. (*Kwak v. St. Anthony De Padua Hospital* (1977), 54 Ill. App. 3d 719, 369 N.E.2d 1346.) Eberle was required to show, by expert testimony, that it was more probable than not that he lost his finger as a result of the actions or inactions of the defendant physicians rather than as a result of other circumstances. Eberle wholly failed to establish a causal connection between the care and treatment rendered by Drs. Brenner and Drennan and the loss of his finger.

Eberle also argues that the trial court abused its discretion in denying his request to file the complete discovery deposition of his expert. Eberle did not seek to file the complete deposition of his expert until the hearing on the physician's motions for summary judgment which was held on April 5, 1984. The trial court denied leave to file the deposition. Eberle moved to vacate the summary judgment, arguing that other portions of Dr. Kinkead's deposition not attached to the physicians' motions for summary judgment demon-

strate that the physicians' delay in treating Eberle contributed to the loss of his finger. In its order denying Eberle's motion to vacate, the trial court granted him leave to file the deposition. The complete deposition is a part of the record on appeal.

We need not determine whether the trial court abused its discretion in denying Eberle leave to file the deposition or in denying his motion to vacate the summary judgment. The trial court's error, if any, was harmless. From a careful review of the complete deposition of Dr. Kinkead, we conclude that it was not his opinion that the treatment rendered by Drs. Brenner and Drennan was a proximate cause of the loss of Eberle's finger.

## BINKS AND GARROLTS

■■ ■ Eberle contends that the trial court abused its discretion in granting Binks and Garrolts' motions to dismiss and for summary judgment. In response, Binks and Garrolts argue that the trial court properly granted the motions because Eberle failed to obtain expert testimony to support his allegations of design defect.

On January 24, 1984, Binks and Garrolts moved to dismiss Eberle's complaint against them as a discovery sanction under Supreme Court Rule 219(c) (87 Ill. 2d R. 219(c)), for his failure to disclose any expert with respect to his negligence and strict-liability claims. At oral argument, counsel for Binks and Garrolts indicated that on April 5, 1984, at the hearing on the motion to dismiss, they made an oral motion for summary judgment. The trial court granted Binks and Garrolts' motion, dismissing the counts against them with prejudice and entering summary judgment in their favor.

Eberle argues that the trial court erred in dismissing his complaint against Binks and Garrolts as a discovery sanction under Rule 219(c). Eberle's position, throughout the proceedings below, was that expert testimony would not be required to establish his claims of design defect. It was not until the filing of the defendants' motions to dismiss that Eberle sought discovery against them. Implicit in the trial court's dismissal and award of summary judgment is its determination that expert testimony is necessary to establish Eberle's negligence and strict-liability claims against Binks and Garrolts. We disagree.

In *Belvidere National Bank & Trust Co. v. Leisher* (1980), 83 Ill. App. 3d 179, 403 N.E.2d 1054, a negligence action against the installers of the gas-fired furnace and the owners of the building, the court rejected the defendant-owner's contention that the plaintiff's negligence action, analogous to a medical malpractice case, re-

quired expert testimony to establish their liability. Reversing the judgment of the trial court granting summary judgment as to both defendants, the court noted that it would not be "beyond the ken of even ordinary people to know that the installation of the furnace in a confined area, surrounded by combustible materials, might present a fire hazard requiring certain precautions." 83 Ill. App. 3d 179, 185, 403 N.E.2d 1054, 1059.

In his complaint, Eberle alleged that the spray gun was negligently designed and was not reasonably safe in that it was not equipped with adequate guards or other safety devices. In our opinion, it would be within the realm of knowledge and experience of laymen to determine whether a spray gun without adequate guards or other safety devices might be unreasonably dangerous. The testimony of experts is therefore not required. We conclude that genuine issues of material fact exist as to Eberle's claims against defendants Binks and Garrolts and that the trial court erred in granting summary judgment. As we have determined that expert testimony is not required to establish Eberle's negligence and strict liability claims, we consider the sanction of dismissal imposed by the trial court for Eberle's failure to disclose expert witnesses to be inappropriate.

For the foregoing reasons, the judgment granting summary judgment in favor of Drs. Brenner and Drennan is affirmed. The judgment dismissing Eberle's claims against defendants Binks and Garrolts and granting summary judgment in their favor is reversed and remanded.

Affirmed in part, reversed in part, and remanded.

GREEN, P.J., and TRAPP, J., concur.